STATE

v.

**Ramon ESPINAL.**

No. 2007–38–C.A.

Supreme Court of Rhode Island.

March 28, 2008.

---

Aaron L. Weisman, Esq., Providence, for Plaintiff.

Janice M. Weisfeld, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

On May 8, 2006, a jury found the defendant, Ramon Espinal, guilty of one count of felony assault in violation of G.L. 1956 § 11–5–2. Thereafter, on July 19, 2006, he was sentenced to a five-year suspended sentence and to a term of five years of probation. In addition, the defendant was ordered to make restitution and to have no contact with the victim.

The defendant has appealed to this Court, contending: (1) that the trial justice erred in denying the motion for a new trial because the only evidence in the record tending to show that he committed a felony assault consisted of prior inconsistent statements, which evidence defendant contends is legally insufficient to sustain the conviction; and (2) that the trial justice erred in denying defendant's motion to exclude evidence regarding the fact that defendant had apologized to one of the alleged victims.

This case came before this Court for oral argument on December 4, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the briefs submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons set forth below, we deny the appeal and affirm the judgment of the Superior Court.

### Facts and Travel

On the night of December 5, 2004, Wilton Marine and his sister, Ylonka Marine, were together at a restaurant located on Broad Street in Providence; defendant was also at that same restaurant. Mr. Marine testified that, while he was sitting with his sister at a table, he "heard a guy behind my left side saying bad words to my sister." Mr. Marine further testified that, when he turned around to confront the person making comments to his sister, that person stood up and struck him on the left side of his face before he was able to confront him. At trial, Mr. Marine identified Mr. Espinal as the person who had struck him. Mr. Marine testified that, after he was struck by defendant, he "blacked out" for approximately ten to thirty seconds. It was further his testimony that, after he recovered, he quickly "drag[ged]" his sister out of the restaurant. Mr. Marine further testified that, once outside the restaurant, he noticed that his sister was bleeding from a cut on her forehead. Three days later, on December 8, 2004, Mr. Marine gave a statement to the police. In that statement, he told the police that Mr. Espinal had assaulted him with a beer bottle.

According to the trial testimony of Mr. Marine, at some point during the week after the incident occurred, he met with Mr. Espinal at a mutual friend's home. Mr. Marine testified that, on that occasion, Mr. Espinal apologized and "said he was ashamed of what happened over there

when he saw my face." Mr. Marine also testified that Mr. Espinal admitted to him that he did strike Mr. Marine in the face, but that he did not do so with a bottle. Mr. Marine testified that, subsequent to the meeting with defendant, he filed a victim impact statement with the Attorney General's office, in which he stated that he would be amenable to an amendment of the criminal charge to that of disorderly conduct.[1] He also stated that he would not object to defendant's being sentenced to only probation as punishment. It was further Mr. Marine's testimony that he spoke with defendant approximately ten times between the time of the December 5, 2004 incident and the time of trial.

Although Mr. Marine had informed the police in December of 2004 that Mr. Espinal had hit him with a bottle, at trial he testified that he did not know what object had been used to hit him at the time of the assault. On cross-examination, Mr. Marine testified that he never saw Mr. Espinal with a beer bottle in his hand and that he did not actually see Mr. Espinal hit him with anything.

Ylonka Marine testified at the criminal trial that, on the night of December 5, 2004, she began arguing with a friend of defendant's; Ms. Marine referred to defendant's friend as "Polo," and she said that the argument took place when Polo started "saying too many bad words to her [friend]." Ms. Marine testified that Mr.

Espinal intervened and told her not to pay attention to Polo because he was drunk. It was further her testimony that her brother had thought that she and Mr. Espinal were arguing; she said that, for that reason, her brother stood up and confronted Mr. Espinal. She testified that at that point Mr. Espinal hit her brother; she testified that she thought Mr. Espinal hit her brother with his hand. She further testified that she then pushed Mr. Espinal and that Polo then took a chair and hit her brother with it a few times. Ms. Marine testified that, when she saw Polo hitting her brother with a chair, she threw a bottle at Polo and that she was then hit in the head with something. It was further her testimony that she was injured "because somebody hit me with a bottle," but that she "didn't know exactly" who hit her with the bottle. At the trial, Ms. Marine also acknowledged that she informed the police shortly after the incident that Mr. Espinal had struck her and her brother with a beer bottle.[2]

Two other persons who were present at the restaurant on the evening of December 5, 2004 testified to the effect that they did not see Mr. Espinal commit any assault.

On April 18, 2005, defendant was charged by criminal information with one count of felony assault upon Mr. Marine and one count of felony assault upon Ms. Marine pursuant to § 11-5-2.[3] The crimi-

---

1. The felony assault charges against defendant are described more fully in a later paragraph of this "Facts and Travel" narrative. It appears that in actuality those initial charges were never amended.

2. Both Marine siblings testified that, at the time they made their statements to the police (which statements would become the "prior inconsistent statements" referred to later in this opinion), the police officer asked them whether they were making a true and accurate statement, and they both answered in the

affirmative. They also testified that they signed the bottom of their respective written police statements.

3. General Laws 1956 § 11-5-2(a) provides:

"Every person who shall make an assault or battery, or both, with a dangerous weapon, or with acid or other dangerous substance, or by fire, or an assault or battery which results in serious bodily injury, shall be punished by imprisonment for not more than twenty (20) years."

nal information charged that defendant assaulted Mr. and Ms. Marine "with a dangerous weapon, to wit, a beer bottle * * *."

A jury trial commenced on May 5, 2006 and continued for two days. At the close of the prosecution's case, defense counsel moved for a judgment of acquittal pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure, asserting that the in-court testimony of the alleged victims failed to establish that defendant committed an assault with a dangerous weapon. Defense counsel stated: "[T]here is nobody simply that places the dangerous weapon, to wit, a beer bottle, in [Mr.] Espinal's hands." In response, the prosecutor pointed out to the trial justice that the prior inconsistent statements of the alleged victims constituted substantive evidence to prove that Mr. Espinal assaulted the victims with a bottle. The trial justice denied the motion, giving particular emphasis to the prior inconsistent statements made by the alleged victims to the police.

At the close of the defense's case, counsel renewed his motion for a judgment of acquittal, reiterating his earlier argument. The trial justice reserved making a decision with respect to that motion.

At the conclusion of the trial on May 8, 2006, the jury acquitted defendant of the charge of felony assault upon Ylonka Marine, but found him guilty of felony assault upon Wilton Marine. At that point, the trial justice denied defendant's motion for a judgment of acquittal, ruling that there was sufficient evidence to support a conviction for felony assault with respect to Mr. Marine.

On July 19, 2006, the Superior Court sentenced defendant to a five-year suspended sentence and to a term of five years of probation. The court also ordered that Mr. Espinal should have no contact with Mr. Marine and that he was to make restitution.

Prior to the date of sentencing, on May 11, 2006, defendant filed a motion for a new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure. Directing the trial justice's attention to the Advisory Committee's Notes concerning Rule 801 of the Rhode Island Rules of Evidence, defense counsel quoted the following language from the Notes:

> "Because of the elevated burden of proof in criminal cases, a trial court may properly direct a verdict of acquittal where a prior inconsistent statement is the only source of support for the central allegations of the charge."

Defense counsel further argued:

> "There simply was no direct testimony, other than the prior inconsistent statement that was disavowed by both witnesses on the stand when they talked about them, disavowed by them. There's been no evidence a bottle was used at all by Mr. Espinal, when [Mr.] Marine was struck."

Defense counsel candidly acknowledged that he had not cited the Advisory Committee's Notes as support in his motions for a judgment of acquittal, and he apologized for not having brought the above-quoted language from those Notes to the trial justice's attention at that time. Defense counsel explained that he had been troubled when the trial justice had relied on the prior inconsistent statements as his basis for denying the motion for a judgment of acquittal, but that it was only after the trial when he "actually had time to calmly reflect" that he "realized what [he] thought was wrong with it." Nevertheless, defense counsel maintained that the court could correct errors of law made during the trial in the interest of justice when ruling on a new trial motion.

The trial justice denied the motion based on the fact that, in addition to other evidence that corroborated the prior statements that the alleged victims had made to police, there was independent evidence that Mr. Marine had been struck with a bottle. In denying the motion, the trial justice made the following finding:

> "[C]ertainly, there was not only this substantive evidence [the prior inconsistent statements], but perhaps even more, because we know from the testimony of Wilton Marine that, in fact, there were some marks to his body and face, especially, that would be consistent with some kind of an object hitting him. There may have been other objects involved, but certainly there was at least some consistency between his injuries and a bottle."

The trial justice noted that it was the role of the jury to weigh the prior inconsistent statements against the statements made at trial and to determine which were more believable. He also remarked that the prior statements were perhaps more reliable as they were made to an authority figure and were "made closest to the incident [and][a]s we all know, memories fade and people start to be impacted by other things that may cause them to forget certain things."

Mr. Espinal filed a notice of appeal on July 28, 2006.[4] On appeal to this Court, Mr. Espinal argues: (1) that the trial justice erred in denying his motion for a new trial based on the fact that the only evidence on the record tending to show that defendant committed a felony assault consisted of prior inconsistent statements,[5] which evidence defendant contends is legally insufficient to sustain a conviction; and (2) that the trial justice erred in denying defendant's motion to exclude testimony concerning the fact that defendant had apologized to one of the alleged victims.

## Analysis

### I

### Motion for a New Trial

■ In his appeal, defendant contends that the sole evidence presented during the trial that he committed a felony assault—i.e., that he struck Mr. Marine with a bottle—consisted of the prior inconsistent statements made to the police by Ylonka Marine and Wilton Marine. The defendant further argues that, because prior inconsistent statements "even when admitted substantively, are incapable, by themselves, of constituting proof beyond a reasonable doubt," such evidence is legally insufficient to sustain the conviction. The defendant points to the Advisory Committee's Notes concerning Rule 801(d)(1)(A) of the Rhode Island Rules of Evidence as support for his contention. Those Notes read in pertinent part as follows:

> "It is important to distinguish between the substantive admissibility of prior inconsistent statements and their sufficiency (or weight). For example, even though *admissible* substantively, a

---

4. The judgment of conviction was not entered until September 5, 2006. The defendant's premature notice of appeal is sufficient, however, since judgment was in fact thereafter entered. *See* Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure ("A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof."); *see also State v. Menard,* 888

A.2d 57, 59 n. 2 (R.I.2005); *State v. Disla,* 874 A.2d 190, 192 n. 2 (R.I.2005).

5. It is undisputed that both Wilton Marine and Ylonka Marine had made statements to the police that were inconsistent with their trial testimony as to whether or not defendant used a bottle in committing the alleged assault.

prior inconsistent statement may not be *sufficient* in itself to sustain a conviction. Because of the elevated burden of proof in criminal cases, a trial court may properly direct a verdict of acquittal where a prior inconsistent statement is the only source of support for the central allegations of the charge." Advisory Committee's Notes to Rule 801 of the Rhode Island Rules of Evidence, *Rhode Island Court Rules Annotated* 1079 (2007 ed.) (internal citations omitted) [hereinafter Advisory Notes].

## A

### Standard of Review

■ When deciding whether to grant or deny a motion for a new trial, "the trial justice acts as a thirteenth juror." *State v. Imbruglia,* 913 A.2d 1022, 1028 (R.I.2007); *see also State v. Woods,* 936 A.2d 195, 197 (R.I.2007); *State v. Abreu,* 899 A.2d 473, 477 (R.I.2006). In considering a motion for a new trial, "the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *State v. Morales,* 895 A.2d 114, 121 (R.I.2006). "If the trial justice concludes that reasonable minds could differ as to the result or if the trial justice reaches the same conclusion as the jury did, the verdict should be affirmed and the motion for a new trial denied." *State v. Day,* 925 A.2d 962, 984 (R.I.2007); *see also Imbruglia,* 913 A.2d at 1028.

■ On review, we accord great weight to a trial justice's ruling on a motion for a new trial if he or she has articulated sufficient reasoning in support of the ruling. *See Day,* 925 A.2d at 983–84; *Imbruglia,* 913 A.2d at 1028; *State v. Hallenbeck,* 878 A.2d 992, 1011 (R.I.2005). Accordingly, we will not overturn a trial justice's decision with respect to such a motion unless we determine that the trial justice committed clear error or that he or she "overlooked or misconceived material and relevant evidence [relating] to a critical issue in the case." *State v. Bolduc,* 822 A.2d 184, 187 (R.I.2003); *see also Day,* 925 A.2d at 984.

## B

### The Waiver Contention

■ Before addressing the substantive issue, we must first address the prosecution's contention that defendant's argument with respect to the prior inconsistent statements has been waived. The state points out that, when defense counsel moved for a judgment of acquittal,[6] he failed to present to the trial justice the argument that prior inconsistent statements are insufficient as a matter of law to sustain a criminal conviction. Accordingly, the prosecution argues that defendant has waived that argument for the purposes of his motion for a new trial as well as on appeal to this Court. We disagree.

Although defense counsel did not explicitly point to the language in the Advisory Notes with respect to prior inconsistent statements when he argued in favor of acquittal, he certainly challenged the sufficiency of the evidence at that time. Defense counsel pointed to the fact that there was no evidence at trial, other than the prior inconsistent statements of the alleged victims, that defendant had assaulted either alleged victim with a bottle. Defense counsel made it clear to the trial justice that his motion for a judgment of

---

**6.** It will be recalled that defense counsel moved twice for a judgment of acquittal— once at the close of the prosecution's case and then again at the close of all the evidence.

acquittal was based on the insufficiency of the evidence. During the hearing on the motion for a new trial, rather than asserting a new and independent legal argument, defense counsel simply provided further legal support for his earlier contention that the evidence was insufficient to sustain a conviction.

We conclude that, in the course of making his motion for a judgment of acquittal, defense counsel adequately outlined for the trial justice the essence of his argument with respect to the insufficiency of the evidence. In our judgment, he has preserved the issue for appeal. Accordingly, we now proceed to address the issue of whether or not there was sufficient evidence to sustain a conviction of felony assault.

## C

### Prior Inconsistent Statements

■ At common law, the prior inconsistent statements of a witness could not be admitted as substantive evidence; they were only admitted in order to impeach a witness's testimony at trial. *See, e.g.,* 4 Clifford S. Fishman, *Jones on Evidence, Civil and Criminal,* § 26:2 at 309 (7th ed. 2000); *see also State v. Coppola,* 502 A.2d 802, 804 (R.I.1985); *State v. Isaac,* 477

A.2d 62, 66 (R.I.1984). The logic undergirding that approach was that such statements constituted inadmissible hearsay because "when the statement was made, [it] was not (1) under oath, (2) in the presence of the trier, or (3) subject to cross-examination." 2 *McCormick on Evidence,* § 251 at 148 (Kenneth S. Broun, 6th ed. 2006).

In more recent times, however, the logic of the common law rule has been challenged.[7] Many legal scholars have focused on the utility of cross-examination of the witness as the principal method of guarding against the fears sought to be allayed by the common law rule. *See, e.g.,* 3A John H. Wigmore, *Evidence in Trials at Common Law,* § 1018 at 996 (Chadbourn rev. 1970) ("Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the hearsay rule has been already satisfied."); *see also State v. Mancine,* 124 N.J. 232, 590 A.2d 1107, 1117 (1991).[8] As one respected treatise on the law of evidence stated in an edition published before the enactment of our Rules of Evidence in 1987:

"[T]he witness who has told one story aforetime and another today has opened the gates to all the vistas of truth which

---

7. Even in its heyday, the common law rule barring the use of prior inconsistent statements as substantive evidence was not exempt from criticism. For example, in *Di Carlo v. United States,* 6 F.2d 364 (2d Cir.1925), no less eminent a jurist than Judge Learned Hand cogently observed:

"If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court." *Id.* at 368.

Similarly, the late Justice Alfred Joslin of this Court, while not departing from the common law rule, explicitly made the following observation in a 1967 opinion:

"[T]here are eminent scholars who believe that the earlier statement being closer to the events is superior in trustworthiness and should therefore have substantive value and be considered as proof of the facts which appear therein * * *." *State v. Quattrocchi,* 103 R.I. 115, 123, 235 A.2d 99, 104 (1967) (citing scholarly publications).

8. As to the relationship between well-conducted cross-examination and the assessment of credibility by the finders of fact, see generally *State v. Tiernan,* 941 A.2d 129 (R.I.2008).

the common law practice of cross-examination and re-examination was invented to explore. The two questioners will lay bare the sources of the change of face, in forgetfulness, carelessness, pity, terror, or greed, and thus cast light on which is the true story and which the false. It is hard to escape the view that evidence of a previous inconsistent statement, when declarant is on the stand to explain it if he can, has in high degree the safeguards of examined testimony." *McCormicks Handbook of the Law of Evidence*, § 251 at 603–04 (E. Cleary 2d ed. 1972).

An additional consideration that militated against continued adherence to the common law rule is "the general proposition that recency aids memory;" in accordance with that "general proposition," prior statements may possess a "superior trustworthiness." 2 *McCormick on Evidence*, § 251 at 149. Prior statements are always made "nearer and usually very much nearer to the event than is the [in court] testimony [and][t]he fresher the memory, the fuller and more accurate it is." *Id.*

In light of the foregoing considerations, the majority of American jurisdictions, including our own, have moved away from the common law rule. *See* Annotation, *Use or Admissibility of Prior Inconsistent Statements of Witness as Substantive Evidence of Facts to Which They Relate in Criminal Case—Modern State Cases*, 30 A.L.R.4th 414, 426–28 (1984 Supp.2007). Pursuant to Rule 801(d)(1)(A) of the Rhode Island Rules of Evidence,[9] prior inconsistent statements may be admitted as substantive evidence "as long as the declarant testifies at trial and is available for cross-examination." *State v. Pusyka*, 592 A.2d 850, 853 (R.I.1991); *see also State v. Bettencourt*, 723 A.2d 1101, 1111 (R.I.1999); *State v. Morey*, 722 A.2d 1185, 1191 (R.I. 1999); *State v. Doctor*, 644 A.2d 1287, 1290 (R.I.1994). We observe, however, that pursuant to Rule 801(d)(1)(A), a trial justice's determination as to whether or not to admit one or more prior inconsistent statements as substantive evidence in the course of the trial is separate and distinct from the determination as to whether or not the statement or statements *suffice in and of themselves* as the basis upon which the trier of fact may properly render a verdict.[10]

We return now to the above-quoted language from the Advisory Notes concerning Rule 801. Even if that language does accurately state what the law in this jurisdiction should be with respect to the sufficiency for conviction of a bald prior inconsistent statement without more, an issue upon which we need not and do not rule today,[11] we conclude that in this case there

---

9. Rule 801(d) of the Rhode Island Rules of Evidence provides in pertinent part:

    "(d) *Statements Which Are Not Hearsay.* A statement is not hearsay if:

    "(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony* * *."

10. We are in complete agreement with the Advisory Committee's Note concerning Rule 801(d) to the effect that "[t]he important point is not to confuse the decision to *admit* such statements substantively with their *sufficiency* to establish the point for which they are offered." Advisory Notes to Rule 801 at 1079.

11. Courts in other jurisdictions have reached differing conclusions as to this issue. *Compare United States v. Orrico*, 599 F.2d 113, 119 (6th Cir.1979) (adopting a *per se* rule against the use of a prior inconsistent statement as the sole substantive evidence supporting a conviction); *Brower v. State*, 728 P.2d 645, 648 (Alaska Ct.App.1986) (ruling that prior inconsistent statements of a witness which are repudiated at trial are insufficient, standing alone, to permit a conviction); *and State v. White Water*, 194 Mont. 85, 634 P.2d 636, 639

is sufficient evidence in the record to sustain a conviction for felony assault.

First, as the trial justice noted, the injuries sustained by Mr. Marine were consistent with being struck by a bottle. This not only corroborates the prior statements of both Wilton and Ylonka Marine, but it constitutes additional independent evidence that Mr. Espinal committed a felony assault.

In addition, there is ample evidence that corroborates the substance of the prior inconsistent statements of both Marine siblings. First, both statements were made to a police officer and were consistent with each other in that *both* Wilton Marine and Ylonka Marine said that defendant had used a bottle to strike Mr. Marine. There was also substantial evidence tending to prove the existence of a friendly relationship between defendant and the Marine siblings and the occurrence of several meetings between defendant and Wilton Marine; those factors may have "clouded" or influenced the victims' memories and eventual testimony concerning what occurred at the Broad Street restaurant on December 5, 2004. As the trial justice noted:

"It's possible that memories do become clouded. And as they acknowledged, they were friendly with the defendant; perhaps to some extent that friendship, the fact that they were willing to essentially have this case be decided with the

probationary period, even a disorderly conduct[,] might cause them to some extent [to] not fully remember what happened that night."

Additional indicia of reliability and credibility may be found in the fact that the statements by the Marine siblings were made closer to the time of the incident in question than their in-court testimony.[12] The alleged victims also made the statements to an authority figure-a police officer—and thus those statements were arguably more reliable than if the statements had been made to a friend or other interested party. In denying the motion for a new trial, the trial justice, pointing to the reliability of the prior statements, observed:

"As we all know, memories fade and people start to be impacted by other things that may cause them to forget certain things. * * * [T]he advantage, as far as credibility, believability is concerned, is that you speak right after the incident to an authority, there's a strong possibility that that's a better recollection of what happened that night than a year-and-a-half later."

This is quite definitely not a case where the only evidence supporting the central allegations of a charge consisted of a prior inconsistent statement alone. In the instant case, there was independent evidence that Mr. Marine had been hit with a beer bottle (*i.e.*, the physical injuries he sus-

(1981) (holding that a conviction cannot rest solely on prior inconsistent statements); *with State v. Newsome*, 238 Conn. 588, 682 A.2d 972, 983–84 (1996) (rejecting a *per se* rule and requiring some degree of corroboration before a prior inconsistent statement will be found to be sufficiently reliable to support a conviction); *State v. Mancine*, 124 N.J. 232, 590 A.2d 1107, 1117–19, 1119 (1991) (rejecting a *per se* rule and ruling that a prior inconsistent statement alone is sufficient to uphold a conviction "provided that the statement was made under circumstances support-

ing its reliability and the defendant has the opportunity to cross-examine the declarant"); *and State v. Robar*, 157 Vt. 387, 601 A.2d 1376, 1380 (1991) (adopting the approach employed by the New Jersey Supreme Court in *Mancine*).

**12.** It will be recalled that the incident that resulted in the instant criminal prosecution occurred in December of 2004, whereas the trial did not begin until May of 2006.

tained), and the prior inconsistent statements of both Wilton and Ylonka Marine were corroborated by other evidence tending to strengthen the reliability and credibility of the earlier statements.[13]

For these reasons, we perceive no error in the trial justice's denial of the motion for a new trial.

## II

### Motion to Exclude Evidence

▪ On appeal, defendant also contends that the trial justice erred in denying his motion to exclude evidence relative to an apology made by defendant to Mr. Marine. Specifically, defendant points to his statements to Mr. Marine to the effect that he was ashamed of what had happened and that he "didn't mean to do that to [Mr. Marine's] face." Defense counsel contends that, in violation of Rule 16 of the Superior Court Rules of Criminal Procedure,[14] the prosecutor withheld information concerning the alleged apology; he also represents that the defense was not made aware of the statements until the night before the criminal trial began.

## A

### Standard of Review

The standard of review applicable to a trial justice's determination of whether or not there was a Rule 16 violation is extremely narrow: we will overturn a trial justice's ruling only if he or she has committed clear error. *See State v. Motyka,* 893 A.2d 267, 280 (R.I.2006); *State v. Briggs,* 886 A.2d 735, 755 (R.I.2005).

▬ When considering the proper sanctions for nondisclosure of discovery material, there are four relevant factors that a trial justice is called upon to examine: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *State v. Coelho,* 454 A.2d 241, 245 (R.I.1982); *see also State v. Horton,* 871 A.2d 959, 970 (R.I.2005); *State v. Pona,* 810 A.2d 245, 248 (R.I.2002). Because the trial justice is in the best position to determine whether or not to impose sanctions for noncompliance with discovery obligations, this Court will not overturn a trial justice's ruling on the appropriate sanctions absent a clear abuse of

---

13. We observe that there were *two* prior inconsistent statements that placed a beer bottle in the hands of defendant. Further, those two statements were consistent with each other.

14. Rule 16 of the Superior Court Rules of Criminal Procedure provides in pertinent part:
    "(a) *Discovery by Defendant.* Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State:
    "(1) all relevant written or recorded statements or confessions, signed or unsigned, or written summaries of oral state-

ments or confessions made by the defendant, or copies thereof;
    " * * *
    "(6) a written summary of testimony that the State intends to use * * * during its case-in-chief at trial, which describes the witness opinions, the bases and reasons for those opinions, and the witness qualifications * * *.
    " * * *
    "(h) *Continuing Duty to Disclose.* If, subsequent to compliance with a request for discovery or with an order issued pursuant to this rule, and prior to or during trial, a party discovers additional material previously requested which is subject to discovery or inspection under this rule, he or she shall promptly notify the other party of the existence thereof."

discretion. *See Pona,* 810 A.2d at 248; *see also Horton,* 871 A.2d at 970.

The fact that defense counsel did not receive the information about defendant's apology until the night before defendant's criminal trial began is uncontroverted. Significantly, however, the prosecution has at all relevant times represented that, as soon as it was made aware of the apology, it provided that information to defense counsel; the credibility of that representation has not been challenged.

Two days prior to the start of trial, defense counsel filed a motion *in limine,* in which he sought to preclude the state from introducing evidence that payments had been made by defendant to the alleged victims.[15] After that motion was filed, the prosecution set about conducting further interviews with the alleged victims in order to become better informed "as to what happened regarding the payment and regarding the meetings with the defendant." It was at that time, as the prosecution has consistently represented, that the information about the apology came to light and that it shared the information with defense counsel.[16]

In making his determination that there was no prejudice to defendant as a result of the late disclosure, the trial justice agreed that the information came to light late in the discovery process, but he reasoned that, because defense counsel was "aware of the compromise [*i.e.,* the monetary payments], it would almost seem * * * that [defendant] would be aware there had to be conversations." The trial justice accepted the prosecution's explanation that it did not delay in providing the information to defense counsel, but rather only became aware of the apology just shortly before trial.

In light of the factors considered by the trial justice and his reasoning with respect to same, we conclude that he most assuredly did not abuse his discretion when he decided not to sanction the prosecution for the late disclosure. Indeed, in view of the above-described circumstances, we are hard-pressed to perceive *any* Rule 16 violation, let alone one calling for a sanction. For these reasons, we affirm the ruling of the trial justice with regard to the alleged Rule 16 violation.

### Conclusion

For the reasons set forth in this opinion, we deny the appeal and affirm the judgment of the Superior Court. The papers in the case may be remanded to the Superior Court.

---

15. The defendant's motion *in limine* was granted.

16. We note that defense counsel chose not to move for a continuance after he became aware of the information concerning an apology made by defendant. Such a motion, if granted, would have afforded counsel an opportunity to alter his trial strategy in light of the apology. *See State v. Briggs,* 886 A.2d 735, 757 n. 10 (R.I.2005).