**STATE**

v.

**Miguel A. NAVARRO.**

**No. 2010–239–C.A.**

Supreme Court of Rhode Island.

Dec. 16, 2011.

---

Aaron L. Weisman, Department of Attorney General, for State.

Martin D. Harris, Esq., for Miguel A. Navarro.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, ROBINSON,
and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

The defendant, Miguel Navarro, appeals from a judgment of conviction for first-degree child molestation sexual assault. On appeal, the defendant contends that the trial justice erred when she denied his (1) motion for a continuance prior to trial; (2) motions for judgment of acquittal; and (3) motion for a new trial. After reviewing the record and considering the parties' written submissions and oral arguments, we find no error on the part of the trial justice and affirm the judgment of the Superior Court.

## I

### Facts and Travel

This case arises from a crime that occurred on August 23, 2005, when then four-year-old Veronica Jones[1] (Veronica) was lured from her apartment complex into a nearby park and sexually assaulted. At that time, Veronica lived in an apartment with her mother, stepfather, and her older brother and sister (John and Grace). As the state's first witness at trial, Veronica recounted the events of that evening. According to Veronica, she and John were sent by their mother to bring Grace, who was playing with a friend in a different apartment within the building, home. When Veronica and her brother knocked on the apartment door where Grace had been playing, they were told she was not there.[2] Thinking that Grace might be in the apartment building's lobby, the two siblings set off to look for her there. In the lobby, the two encountered one of John's friends, Larry, who invited them both outside to play in the apartment complex's playground. They agreed, and soon all three were playing on the swings together.

Veronica further testified that while she, John and Larry played on the swings, defendant approached them and asked whether they wanted some ice cream.[3] While John and Larry said "no," Veronica accepted the offer and left the playground with defendant. Veronica followed defendant along a street and up a hill toward a neighborhood park. According to Veronica, after proceeding down a long set of stairs at an entrance to the park, defendant pushed her to the ground, pulled down her pants, told her to be quiet, and digitally penetrated her vagina. Veronica explained that she consequently "got cut" by defendant's long fingernail. Veronica then kicked defendant and ran crying from the park to her home. While running, Veronica met up with her brother and stepfather, who had been looking for her. Upon returning home, Veronica told her family what had happened. Veronica's mother looked at the girl's vagina and discovered blood on her underwear. That night, Veronica's parents called the police and took her to the hospital.

On September 7, 2005, while being observed by the police, Veronica picked defendant's photograph out of a six-person photo array and identified him as the per-

---

1. Because the complaining witness was a minor at the time of the incident, we shall use a pseudonym to protect her privacy. We will likewise use pseudonyms for all members of Veronica's family, as well as any other minors, involved in this case.

2. Grace was actually in the apartment but did not want her play date to be disturbed.

3. Specifically, defendant asked whether they wanted any "limbe," a Spanish term for ice cream.

son who had, some two weeks earlier, sexually molested her in the park. Additionally, at trial, Veronica made an in-court identification of defendant as her assailant.

Veronica's brother John—eleven years old at the time of trial—was the state's second witness. John's testimony confirmed Veronica's version of events, and it also included an in-court identification of defendant as the man who, on the night of the incident, approached the children while they were playing on the swings and later left with Veronica. John further asserted that on the night of the incident, he recognized defendant as a person whom he previously had seen around the neighborhood.[4] The day after the incident, while being escorted by a police officer in an unmarked police car, John showed police where defendant lived. Additionally, on September 2, 2005, while at home and in the presence of a police officer, John picked defendant's photograph out of a six-person photo array as the person who had left the park with Veronica on the night of the incident.

We now turn to the facts pertinent to defendant's challenge to the denial of his motion for a continuance. After his arrest, the then seventeen-year-old defendant was represented by private attorney Martin Harris at a Family Court hearing on October 3, 2005, in which the court waived its jurisdiction over him, allowing defendant to be tried as an adult. On October 18, 2005, defendant was again represented by

Mr. Harris at a bail hearing in the District Court. On May 12, 2006, a grand jury indicted defendant on one count of first-degree child molestation sexual assault, in violation of G.L.1956 § 11–37–8.1, as enacted by P.L.1984, ch. 59, § 2[5] and § 11–37–8.2, as enacted by P.L.1984, ch. 59, § 2.[6]

After being arraigned in Superior Court, a jury trial was scheduled to begin in early September 2008, by which time a public defender, John Lovoy, was appointed to represent him. However, on the first day of trial, defendant sought a continuance to allow him to engage the services of Mr. Harris. The trial justice denied that motion. The defendant's trial then proceeded with Mr. Lovoy as counsel; it ultimately resulted in a mistrial on September 16, 2008, as the result of a deadlocked jury.[7] Although not representing defendant at the time, Mr. Harris attended and observed most of the first trial; and, at its conclusion, he ordered certain portions of the trial transcripts.

The defendant's retrial was scheduled for October 29, 2008. Mr. Lovoy represented defendant at all necessary conferences between the conclusion of the first trial and the beginning of the second trial. However, on October 21, 2008, defendant's family formally retained Mr. Harris to represent defendant. On October 23, 2008, Mr. Harris filed both an entry of appearance and a motion for a sixty-day continuance to allow him "an adequate opportunity to properly investigate and prepare [for

---

4. John also testified that he had seen defendant outside defendant's house and around the neighborhood five or six times before.

5. General Laws 1956 § 11–37–8.1, as enacted by P.L.1984, ch. 59, § 2 reads:

"A person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person thirteen (13) years of age or under."

6. Section 11–37–8.2, as enacted by P.L.1984, ch. 59, § 2 read at the time of the crime:

"Every person who shall commit first degree child molestation sexual assault shall be imprisoned for a period of not less than twenty (20) years and may be imprisoned for life."

7. As discussed *infra*, defendant's case was ultimately retried with the same trial justice presiding.

the retrial]." That same day, a stipulation was filed allowing Mr. Lovoy to withdraw from the case. In response, the state, on October 27, 2008, filed an objection to defendant's motion for a continuance, as well as a motion to disqualify Mr. Harris as defense counsel, the latter based on the fact that Mr. Harris was a potential witness in the upcoming retrial.[8]

On October 29, 2008—the "date certain" set for defendant's second trial to begin—the trial justice heard argument concerning defendant's motion for a continuance. Viewing the motion as an "11th-hour request," the trial justice denied the motion. The trial justice then inquired whether Mr. Harris was prepared to represent defendant without the continuance, to which Mr. Harris replied that he was not. Accordingly, the trial justice did not excuse Mr. Lovoy from representing defendant. Because the continuance was denied, and Mr. Harris did not replace Mr. Lovoy as defendant's counsel, the trial justice determined the state's motion to disqualify Mr. Harris to be moot. Jury empanelment for the retrial commenced later that day.

Testimony in the retrial transpired over four days; and, on November 12, 2008, the jury found defendant guilty of first-degree child molestation. On December 1, 2008, defendant's motion for a new trial was denied. On February 19, 2009, the trial justice sentenced defendant to sixty-five years, with thirty-five years to serve and thirty years suspended, with probation.[9]

## II

## Discussion

### A

### Right to Choose Counsel

The thrust of defendant's appeal is his assertion that his Sixth Amendment[10] right to counsel was violated when the trial justice denied his motion for a sixty-day continuance. The defendant contends that he sought to continue the trial to allow his newly retained counsel sufficient time to prepare for the retrial. Not willing to delay the start of trial by sixty days, the trial justice denied this motion. Because Mr. Harris was unprepared to try the case as originally scheduled, defendant was represented by Mr. Lovoy, the same public defender who had represented him at his first trial. Thus, defendant argues that the trial justice violated his Sixth Amendment right to secure counsel of his choice by denying the continuance that would have enabled his chosen counsel to prepare

8. *See infra,* note 17. In its motion to disqualify, the state cited Mr. Harris's potential conflict created by Article V, Rule 3.7 of the Supreme Court Rules of Professional Conduct, which states in pertinent part:
"(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
"(1) the testimony relates to an uncontested issue;
"(2) the testimony relates to the nature and value of legal services rendered in the case; or
"(3) disqualification of the lawyer would work substantial hardship on the client."

9. In meting out this sentence, the trial justice considered the "aggravating circumstances"

that this singular crime entailed. These circumstances included the gravity of the crime defendant perpetrated on a child-victim, the need for the community to be protected from dangerous pedophiles such as defendant, and the unlikelihood that defendant would ever do what was necessary to be rehabilitated from his sexual deviancy.

10. The Sixth Amendment to the United States Constitution provides in part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, * * * and to have the assistance of counsel for his defence."

for trial.[11]

## 1

### Standard of Review

■ "It is well settled that the decision whether to grant a defendant's request for a continuance to secure alternative counsel lies within the sound discretion of the trial justice." *State v. Snell,* 892 A.2d 108, 120 (R.I.2006) (citing *State v. Ashness,* 461 A.2d 659, 663 (R.I.1983)). "In exercising that discretion, 'the trial justice must weigh the interest of the defendant in securing counsel of his choice against the interest of the public in an efficient and effective judicial system.'" *Id.* (quoting *Ashness,* 461 A.2d at 663–64). Therefore, we will not disturb the trial justice's decision absent a clear abuse of discretion. *State v. Powell,* 6 A.3d 1083, 1086 (R.I. 2010) (citing *State v. Gilbert,* 984 A.2d 26, 29 (R.I.2009)).

## 2

### Analysis

■ The conflict between a criminal defendant's right to be represented by the attorney of his or her choice and a trial justice's need for ample discretion in managing a trial to a just conclusion is not unfamiliar to this Court. Indeed, in *State v. Moran,* 699 A.2d 20 (R.I.1997), we were faced with this very issue. We therefore look to *Moran* and its progeny for guidance in determining the case at bar.

■ In *Moran,* 699 A.2d at 25, we emphasized "that an accused's right to select his or her own attorney to defend against criminal charges has a central role in our adversary system of justice." We also acknowledged that, while this choice of a criminal defendant "is not absolute, it

does command a presumption in favor of its being honored." *Id.* At the same time, we recognized that "[a] sustainable exercise of discretion in this context requires the trial justice to balance carefully the presumption in favor of the defendant's right to trial counsel of choice and the public's interest in the prompt, effective, and efficient administration of justice." *Id.* (citing *State v. Farman,* 600 A.2d 726, 728 (R.I.1992)).

Mindful of these basic constitutional principles, we consider the not uncommon situation that arises when a criminal defendant, in exercising his or her right to choose counsel, petitions a trial justice for a trial continuance. We have held that "[j]udges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for delay," *State v. Bido,* 941 A.2d 822, 831 (R.I.2008) (quoting *Snell,* 892 A.2d at 120), and they must ensure that a defendant's right to choose counsel is not "manipulated to delay proceedings or hamper the prosecution." *Id.* Nevertheless, "the wheels of justice cannot churn so fast that a defendant's constitutional right to counsel of choice turns to butter." *Moran,* 699 A.2d at 25 (citing *Gandy v. Alabama,* 569 F.2d 1318, 1322 (5th Cir.1978)). Because of these "countervailing considerations, it follows ineluctably that each case must turn on its own circumstances." *Id.* at 25–26 (citing *Gandy,* 569 F.2d at 1324).

■ In *Moran,* we outlined some of the factors to be weighed in such an analysis, including:

"the promptness of the continuance motion and the length of time requested; the age and intricacy of the case; the inconvenience to the parties, witnesses, jurors, counsel, and the court; whether the request appears to be legitimate or

---

11. We note that Mr. Harris is representing defendant in this appeal.

merely contrived foot dragging; whether the defendant contributed to the circumstances giving rise to the request; whether the defendant in fact has other competent and prepared trial counsel ready to pinch-hit; whether there are multiple codefendants, making calendar control more difficult than usual; and any other relevant factor made manifest by the record." *Moran,* 699 A.2d at 26 (citing *United States v. Mendoza–Salgado,* 964 F.2d 993, 1015 (10th Cir.1992)); *see Bido,* 941 A.2d at 831.

Applying these factors to the case at hand, we are satisfied that the trial justice did not abuse her discretion by denying defendant's motion for a continuance to secure alternate counsel. It is clear from the record that the trial justice, in coming to her decision, properly evaluated the particular circumstances involved in this case.

First, the trial justice considered the relatively young ages of the state's two principal trial witnesses—eight-year-old Veronica and her eleven-year-old brother, John. As they were the only two witnesses to take the stand who saw defendant on the night of the crime, their testimony was pivotal at trial. These children had only weeks earlier endured the ordeal of testifying before a jury at the first trial concerning a violent sexual assault. Postponing the retrial to allow for defendant's requested sixty-day continuance may have jeopardized the state's ability to present these critical witnesses. In denying the continuance, the trial justice also expressed that in her view the motion was a "delay to throw [the] prosecution and the child witnesses into an undue stressful situation." We agree with the trial justice's reasoning that deferring the trial for sixty days—placing the start of trial in the midst of a holiday season—would have imposed significant inconvenience to all parties involved, especially these two children. *See Snell,* 892 A.2d at 120 (noting "the inconvenience and emotional turmoil" that a continuance may cause witnesses).

Second, the trial justice also took into account Mr. Harris's high degree of involvement and familiarity with defendant's case preceding the requested continuance. The basis for defendant's request was to provide Mr. Harris with additional time to "properly investigate and prepare" for the retrial and, apparently, to alleviate Mr. Harris's heavy trial schedule.[12] The circumstances of this case, however, did not demonstrate a need for this additional time to prepare, as defendant contends. Significantly, Mr. Harris had become aware of the facts of defendant's case approximately three years before the start of the retrial—specifically, when he represented defendant in both the Family and District Courts. Mr. Harris's fluency with the case was further developed when he independently interviewed several potential witnesses. The record reflects that Mr. Harris kept a dedicated case file that included these witness statements. Furthermore, as noted by the trial justice, while Mr. Harris did not represent defendant during his first Superior Court jury trial, he did sit through nearly the entire proceeding. Mr. Harris had also obtained transcripts of the first trial by the time the trial justice entertained the continuance request. Finally, at the continuance hearing, Mr. Harris indicated that two other trials for which he had been preparing had, in fact, "[fallen] through" and were no longer considerations supporting the continuance of the retrial.

12. Mr. Harris initially indicated that he was also committed to two unrelated trials that were scheduled to begin on October 23, 2008, and October 27, 2008, and a third trial that probably would be reached soon thereafter.

Considering the depth and breadth of Mr. Harris's involvement in the case up until that point, the trial justice properly determined that the sixty-day continuance hardly seemed commensurate with the need to truly prepare for defendant's retrial. Indeed, the circumstances of this case are far removed from the scenario in which a retained attorney at the eleventh hour enters an appearance, knowing virtually nothing about the case he or she is charged with trying. *See, e.g., Moran,* 699 A.2d at 27.

■ Third, the trial justice considered whether the sixty-day continuance request—filed just six days before the retrial was set to begin[13]—was likely a delay tactic. Of import was defendant's past history concerning continuances. As the record reflects, this was not the first time defendant had waited until the last moment to acquire new counsel and request a continuance. As acknowledged by the trial justice, defendant had requested a continuance on the first day of the earlier trial to allow Mr. Harris, who was preparing to represent defendant, sufficient time to prepare. That earlier request was denied by the same trial justice.[14] Furthermore, after the conclusion of the first trial on September 16, 2008, defendant had well over a month to retain Mr. Harris. Instead, the motion for a continuance and Mr. Harris's entry of appearance were not filed until six days before the trial was set to begin.[15] In *State v. Ashness,* this Court

explained that, when a defendant waits until the start of trial to request a continuance, "the necessity for the efficient and effective administration of criminal justice outweigh[s][the] defendant's interest in securing counsel of his [or her] choice." *Ashness,* 461 A.2d at 664.[16] Whether intentional or not, this flurry of activity just prior to the start of both trials appears to this Court, as it did to the trial justice, as "one more attempt to throw a wrench into a trial that [was] ready to start."

■ Furthermore, the record indicates that the trial justice had a murder trial scheduled to start immediately after defendant's trial. "[W]hen cases are set far in advance for a day certain, an unreasonable delay in one case only serves to delay other cases, and this carries the potential for prejudice to the rights of other defendants." *Moran,* 699 A.2d at 25 (quoting *United States v. Burton,* 584 F.2d 485, 490 (D.C.Cir.1978)). Moreover, defendant did "in fact ha[ve] other competent and prepared trial counsel ready to pinch-hit"—an additional factor weighing in favor of denying the continuance. *Moran,* 699 A.2d at 26. At the continuance hearing, defendant still was represented by Mr. Lovoy—the same public defender who represented defendant at the initial trial (that resulted in a mistrial). The trial justice recognized Mr. Lovoy's competence and familiarity with defendant's case, noting that he represented defendant "competently, adequately, and quite well at the prior trial."

---

13. Mr. Harris himself conceded "the eleventh-hour" nature of defendant's continuance request.

14. The denial of the earlier continuance request is not at issue in defendant's appeal.

15. We do acknowledge the apparent time and effort defendant's family expended in procuring the money necessary to retain Mr. Harris's representation.

16. Although we employ *State v. Moran,* 699 A.2d 20 (R.I.1997), in our analysis, we factually distinguish the instant case from that matter, in which we held that, because the defendant filed a motion to continue "three weeks before the [defendant's] robbery trial began and four days before the pretrial conferences were to commence," the motion was "timely filed," and the continuance should have been granted. *Id.* at 24, 26, 27.

Although not the controlling factor, having competent counsel ready to immediately proceed was another consideration weighing in favor of denying the continuance.

The preceding factors, taken together, warrant the conclusion that the trial justice did not abuse her discretion in denying defendant's motion for a sixty-day continuance. Therefore, we hold that defendant's constitutional rights were not infringed, and we will not overturn his conviction on that basis.[17]

## B

### Sufficiency of the Evidence

 On appeal, defendant also asserts that the trial justice erred when she denied his motions for judgment of acquittal and for a new trial. In these motions, defendant challenged the legal sufficiency of the evidence. In considering a motion for a new trial, the trial justice is permitted to use "independent judgment to weigh the evidence and assess the credibility of the witnesses." *State v. Pineda*, 13 A.3d 623, 640 (R.I.2011) (quoting *State v. Dame*, 560 A.2d 330, 334 (R.I.1989)). However, prevailing on a motion for a judgment of acquittal is more challenging for a defendant because "the trial justice 'must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw[ing] therefrom all reasonable inferences consistent with guilt.'" *Id.* (quoting *State v. Cardin*, 987 A.2d 248, 250 (R.I.2010)). "When faced with a defendant's challenge to the rulings on both [types of] motions, as [is the case] here, this Court first conducts a review of the new-trial motion." *Id.* (cit-

ing *State v. Cardona*, 969 A.2d 667, 672 (R.I.2009) ("Because both of defendant's motions raised the same challenge to the sufficiency of the evidence, we shall conduct the more exacting analysis required for review of a ruling on a motion for a new trial.")). In other words, if a defendant cannot demonstrate "that the presented evidence failed to support [a] conviction [under] the motion-for-a-new-trial standard," it follows that the defendant will likewise be unable to show entitlement to a judgment of acquittal. *Id.* (citing *State v. Hesford*, 900 A.2d 1194, 1200 (R.I. 2006)).

## 1

### Motion for a New Trial

 "When deciding whether to grant or deny a motion for a new trial, 'the trial justice acts as a thirteenth juror.'" *Pineda*, 13 A.3d at 640–41 (quoting *State v. Espinal*, 943 A.2d 1052, 1058 (R.I.2008)). "The trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *Id.* at 641 (quoting *Espinal*, 943 A.2d at 1058). "On appeal, this Court 'accord[s] great weight to a trial justice's ruling on a motion for a new trial if he or she has articulated sufficient reasoning in support of the ruling.'" *Id.* "We will overturn the trial justice's decision only if we are convinced 'that the trial justice committed clear error or that he or she overlooked or misconceived ma-

---

17. We pause to note that, even if the trial justice had granted defendant's motion to continue, it is unlikely that Mr. Harris would have been able to proceed as defendant's counsel. In the first trial, Mr. Harris was called as the state's witness to testify about witness interviews he conducted during his initial investigation of the crime. Because he might well have been called to testify in the retrial, the state's motion to disqualify probably would have been granted by the trial justice.

terial and relevant evidence [relating] to a critical issue in the case.'" *Id.*

■ Here, defendant argues that the trial justice erred in denying his aforementioned motions because "the identification testimony and evidence establishing [defendant] as the perpetrator * * * was highly suggestive." Specifically, defendant contends that the testimony at trial "clearly and unequivocally establishe[d] that [the identification of defendant] was materially influenced by the police identification process and/or family members of the victim." To support this contention, defendant cites Veronica's testimony on redirect examination that she was told of defendant's first name by her mother or sister before she identified him from the police photo array. The defendant suggests that Veronica's "familiarity" with defendant prior to making the identification in the presence of police raises a "strong inference[ ] of suggestibility by a third party."

The defendant also argues that John was not a credible witness. He asserts that the police provided the six-person photo array to John in his home prior to Veronica making an identification of defendant, and he contends that this action created "a strong inference of manipulation" by the police. The defendant also points to trial testimony in which an assistant attorney general revealed that during two interviews conducted by the Office of the Attorney General in October 2005, John recanted his identification of defendant as the perpetrator of the crime from the photo array provided by the police. Noting these facts, defendant argues that the trial justice erred by denying his motion for a new trial. We disagree.

At the hearing on defendant's motion for a new trial, the trial justice thoroughly examined what she considered to be "the credible evidence on the record." The trial justice recognized that Veronica was an "excellent witness" and a "very intelligent and mature child." Her testimony was "clear and articulate" and "did not appear scripted or coached." The trial justice emphasized that Veronica was "willing and able to recall and relate many details" of the crime. The trial justice determined that "the jury was justified in accepting [Veronica's] testimony as to the material issues that she addresse[d], including her identification of the defendant as the perpetrator of the attack."

Regarding John, the trial justice acknowledged that although he was "a very shy boy" who "was very uncomfortable on the witness stand and appeared scared," he nonetheless "appeared candid." The trial justice attributed this apprehension to "having to speak in public before a room of strangers [and also] having to speak in the presence of the defendant." As to John's earlier recantation of his prior photo identification of defendant, the trial justice "would have considered [these inconsistent statements] as evidence of his fear, not as evidence that he made a false identification of the defendant when shown the photo array." The trial justice also inferred that John did not run home to tell his family that Veronica left the playground with a stranger because he recognized defendant from the neighborhood. Furthermore, the trial justice recognized that when John returned home he told his family that defendant had taken his sister, before he knew anything untoward had happened to her. In addition, the trial justice noted that there was "absolutely no evidence" that anyone in Veronica's family had any interest in having the wrong person identified. Finally, the trial justice considered the evidence against defendant to be "overwhelming."

After reviewing the record, we are satisfied that the trial justice provided "sufficient reasoning in support of [her] ruling"

on defendant's motion for a new trial. *Espinal*, 943 A.2d at 1058. Given the deference afforded to the trial justice's ruling, as well as the abundance of evidence against defendant, we decline to offer defendant a new trial.

## 2

### Motions for Judgment of Acquittal

■ "We review a trial justice's denial of a motion for a judgment of acquittal using the same prosecution-deferential standard as the trial court applies." *Pineda*, 13 A.3d at 642 (citing *Cardin*, 987 A.2d at 250). "When 'viewed in this light, [if the evidence] is sufficient to support a verdict of guilty beyond a reasonable doubt, the motion must be denied.'" *Id.* (quoting *State v. Grant*, 946 A.2d 818, 826 (R.I.2008)). Because we have "concluded that the evidence [in this case] 'was sufficient to withstand the more stringent review applicable to a motion for a new trial, it follows that the evidence [before us is] also sufficient to withstand a motion for a judgment of acquittal.'" *Id.* (quoting *Hesford*, 900 A.2d at 1200). Accordingly, we decline to disturb the trial justice's denial of the defendant's motions for judgment of acquittal.

## III

### Conclusion

For the reasons set forth in this opinion, we affirm the Superior Court judgment in all respects and direct that the record be remanded to the Superior Court.