**STATE**

**v.**

**Robert HESFORD.**

**No. 2002–621–C.A.**

Supreme Court of Rhode Island.

June 29, 2006.

Virginia M. McGinn, Esq., Providence, for Plaintiff.

Paula Rosin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendant, Robert Hesford, appeals from a judgment of conviction after a jury found him guilty of disorderly conduct and refusing to relinquish a telephone when he knew or should have known that it was needed for an emergency call. Because the defendant's disorderly conduct conviction was his third domestic violence violation, *see* G.L.1956 § 12–29–5(c)(1)(ii), he was sentenced to ten years imprisonment, with eighteen months to serve in the Adult Correctional Institutions (ACI) and the remaining eight and a half years suspended, with probation. In addition, he was ordered as a condition of probation to complete successfully a batterers' intervention program and a substance abuse treatment program. The defendant was sentenced to ninety days in the ACI for the telephone

obstruction conviction, to be served concurrently with his other sentence.

The defendant argues on appeal that: (1) his enhanced sentence for disorderly conduct as a third-time offender was illegal in light of this Court's decision in *State v. Martini*, 860 A.2d 689 (R.I.2004); (2) the trial justice erred in denying his motion for judgment of acquittal on the disorderly conduct charge because there was no evidence that defendant's conduct happened in public or that members of the public were disturbed by his conduct; and (3) the trial justice erred in denying his motion for a new trial on the disorderly conduct charge because the state did not prove the elements of that crime beyond a reasonable doubt. For the reasons set forth herein, we affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

An argument about defendant's ex-wife began the domestic altercation that led to the charges against Mr. Hesford. The defendant and the complainant, Mary Ellen Amaral, had been together for seven years and shared a home in Cranston. Ms. Amaral testified that on June 24, 2001, at approximately 8:30 p.m., she began yelling and screaming at defendant because his former wife allegedly had threatened to beat her up. Mr. Hesford joined the oral argument, and it quickly escalated. According to Ms. Amaral, defendant became "a little upset" and "pushed" the Sunday paper and a cordless telephone off

the kitchen table with his arm, knocking the objects to the floor. She said this action made her "[a]gitated, nervous," and prompted her to call the police so that defendant would leave.

According to Ms. Amaral, when she told defendant that she was about to call the police, he grabbed the cord to the remaining telephone and yanked the wire out of the wall socket. Ms. Amaral stood behind him and grabbed his arm in an attempt to stop him from pulling the wire out of the wall. She testified that as she attempted to pry his fingers from the telephone cord his hand "came back and hit" her in the face, leaving a cut on her left eye that was bleeding but required no medical attention other than wiping off the blood.[1] At this point, Ms. Amaral grabbed a flat iron that defendant's earlier swiping action apparently had failed to dislodge from the kitchen table, and she threw it at Mr. Hesford, causing him to fall. Ms. Amaral then fled to the home of her neighbor Catherine Foster to call the police. Ms. Foster, who testified that Ms. Amaral appeared on her doorstep bleeding and crying, said that she allowed Ms. Amaral to use her telephone after Ms. Amaral told her that defendant had "hit" her. After making the call, Ms. Amaral sat on the steps of her own home to wait for the police, who soon arrived, as did an ambulance. Ms. Amaral testified that she called the police only because she wanted defendant to stay somewhere else for a few days. She also testified that she was, at the time of trial, still living with defendant,[2] loved him, did not want any-

---

**1.** Later in her testimony, Ms. Amaral acknowledged that she originally told the police that defendant had "punched" her in the eye. Sergeant Gerard A. Carnevale, a patrol officer for the Cranston Police Department dispatched to the scene on the night of the incident, also testified that on that night Ms. Amaral "described it as a punch." Because

the jury acquitted defendant of the simple-assault charge in this case, this conflicting testimony concerning the nature of the blow delivered by defendant is not a subject of the present appeal.

**2.** The trial justice noted that Ms. Amaral and defendant were living together in violation of a no-contact order dated October 22, 2001,

thing bad to happen to him, and did not want to see him convicted.

By the time the police arrived, defendant had left. Sergeant Gerard A. Carnevale testified that he encountered Ms. Amaral "upset, * * * crying and shaking." He observed that her eye was slightly swollen and that it continued to swell while he was there. When Sgt. Carnevale entered the apartment, he observed newspapers and other articles strewn across the floor, as well as a telephone line that had been ripped from the wall. He testified that he also saw a blood spot on the surface of the kitchen table. Photographs of the scene of the incident and Ms. Amaral's lacerated eye also were admitted into evidence. After the state rested, defendant pressed motions for judgment of acquittal on the disorderly conduct charge and the simple-assault charge, both of which the trial justice denied.

The defendant did not testify or present additional evidence. The state and defendant then stipulated that defendant had been convicted twice previously of crimes of domestic violence as defined in the Domestic Violence Prevention Act (DVPA). This fact was relevant for determining whether defendant was subject to the sentencing enhancement provisions of the DVPA found in § 12–29–5(c)(1) for repeat domestic violence offenders. The trial justice instructed the jurors on the three charges against defendant: (1) simple assault under G.L.1956 § 11–5–3 (count 1); (2) refusing to relinquish, damaging, or obstructing a telephone when one knows or should have known that it was needed

for an emergency call under G.L.1956 § 11–35–14 (count 2); and (3) disorderly conduct under G.L.1956 § 11–45–1(a) (count 3). After deliberating, the jury found defendant guilty on the telephone obstruction and disorderly conduct charges, and not guilty on the simple-assault charge.

■ Subsequently, defendant filed a motion for a new trial, alleging that the evidence was insufficient to support the verdict of guilty on the disorderly conduct charge. The matter was heard on May 10, 2002. Finding the testimony of Ms. Amaral, Ms. Foster, and Sgt. Carnevale to be credible, the trial justice concluded that there clearly was "fighting" between defendant and Ms. Amaral on the evening of June 24, 2001. He also found that defendant exhibited "tumultuous behavior" by hitting Ms. Amaral, pulling the telephone cord out of the wall, and knocking the contents off the kitchen table onto the floor. Characterizing the incident as an obvious "melee," the trial justice found that the state's evidence of defendant's behavior was sufficient for the jury to find defendant guilty of disorderly conduct under § 11–45–1(a), and he denied the motion for a new trial. The defendant filed a premature notice of appeal on May 17, 2002,[3] and on June 14, 2002, a judgment of conviction was entered.

## II

### The Legality of Defendant's Sentence for Disorderly Conduct

■ The defendant's first argument on appeal is that this Court's decision in *Mar-*

---

prohibiting defendant from having any contact whatsoever with Ms. Amaral. Ms. Amaral filed a motion to vacate this no-contact order on September 6, 2002, after defendant was convicted. A trial justice of the Superior Court denied the motion to vacate on September 16, 2002.

**3.** A notice of appeal filed prematurely, before the entry of judgment, is valid, because "this Court treats the appeal as if it had been filed after the entry of judgment." *Dovenmuehle Mortgage, Inc. v. Antonelli*, 790 A.2d 1113, 1114 n. 1 (R.I.2002).

*tini* renders his sentence illegal because, based on *Martini*, defendant's conviction for disorderly conduct is not subject to the DVPA's sentencing enhancement provisions found in § 12–29–5(c)(1)[4] because disorderly conduct is classified as a petty misdemeanor. *See Martini*, 860 A.2d at 693. He contends that instead, he should have been sentenced pursuant to the penalty provision of the disorderly conduct statute itself, which permits a prison sentence of no more than six months, a fine of no more than $500, or both. *See* § 11–45–1(c).

Although the state acknowledges that the eighteen-month sentence, post-*Martini*, clearly exceeds that provided by statute, and does not oppose defendant's request to remand the case to the Superior Court for resentencing, the state points out that defendant "has waived the opportunity to argue on direct appeal that his sentence should not have been enhanced to a felony." Indeed, defendant's counsel affirmatively said on the record at trial that he was waiving any argument that a conviction on either the simple assault or disorderly conduct charge did not constitute a felony as a third offense under the DVPA.

This Court agrees with the state that the issue of whether defendant's sentence should be reduced is not properly before us at this time. The record in this case reveals that defendant has not filed a motion to reduce sentence under Rule 35 of the Superior Court Rules of Criminal Procedure.[5] It is well settled in this state that:

> "in the absence of 'extraordinary circumstances,' this Court will not consider the validity or the legality of a sentence on direct appeal. * * * Rather, we have repeatedly held that the proper procedure for a review of a sentence begins in the Superior Court under Rule 35 of the Superior Court Rules of Criminal Procedure. * * * In the event that a defendant continues to be aggrieved by the ruling of the Superior Court, this Court then will review the decision on appeal." *State v. Bettencourt*, 723 A.2d 1101, 1114 (R.I.1999) (quoting *State v. Collins*, 679 A.2d 862, 867 (R.I.1996)).

This Court has not delineated specifically what would constitute "extraordinary circumstances." We have held, however, that a defendant's allegation that a sentence was unlawful because the trial justice "considered improper criteria in imposing the sentence" did not amount to an extraordinary circumstance. *State v.*

---

4. The sentencing enhancement provision at issue in the present case is contained in G.L. 1956 § 12–29–5(c)(1)(ii), which provides:

> "(c)(1) Every person convicted of an offense punishable as a misdemeanor involving domestic violence as defined in § 12–29–2 shall:
> " * * *
> "(ii) For a third and subsequent violation be deemed guilty of a felony and be imprisoned for a term of not less than one year and not more than ten (10) years."

Section 12–29–2(a)(4) includes disorderly conduct within the definition of domestic violence for purposes of the Domestic Violence Prevention Act (DVPA).

5. Rule 35 of the Superior Court Rules of Criminal Procedure states, in relevant part:

> "(a) *Correction or reduction of sentence.* The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner and it may reduce any sentence when a motion is filed within one hundred and twenty (120) days after the sentence is imposed, or within one hundred and twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment or dismissal of the appeal, or within one hundred and twenty (120) days after receipt by the court of a mandate or order of the Supreme Court of the United States issued upon affirmance of the judgment, dismissal of the appeal, or denial of a writ of certiorari."

*Brigham,* 638 A.2d 1043, 1046–47 (R.I. 1994); *see Bettencourt,* 723 A.2d at 1114. We also have held that no extraordinary circumstances arose when a hearing justice extended a defendant's sentence by imposing an additional probationary period. *State v. Vashey,* 823 A.2d 1151, 1156–57 (R.I.2003). This Court similarly has said that no extraordinary circumstances existed when a defendant "essentially [was] challenging the length of his sentence" by arguing that the trial justice improperly sentenced him to consecutive sentences. *State v. Girard,* 799 A.2d 238, 253–54 (R.I.2002). Likewise, we held that no extraordinary circumstances were present in a case in which the defendant argued that his sentence was too long because the trial court sentenced him inappropriately under certain habitual criminal provisions of the General Laws similar to the one at issue in the present case. *State v. Morris,* 744 A.2d 850, 859–60 (R.I. 2000) (involving G.L.1956 § 12–19–21).

Here, as in the above-noted cases, defendant has not raised an extraordinary circumstance that would allow us to consider the legality of his sentence on direct appeal. "[B]ecause the issue raised does not amount to an extraordinary circumstance, the absence of a determination made pursuant to a Rule 35 motion precludes this Court's consideration of the defendant's challenge to his sentence." *Bettencourt,* 723 A.2d at 1114. As in the other cases we have faced concerning this issue, we note that "[t]he statutory 120–day period in which to seek Superior Court review of the sentence commences on the date of this opinion should the defendant choose to file such a motion." *Id.*

### III

### The Legal Sufficiency of the Evidence

The defendant also argues that the evidence presented was legally insufficient to prove disorderly conduct beyond a reasonable doubt. As such, defendant contends that the trial justice committed two errors by denying both the motion for a new trial and the motion for judgment of acquittal. We disagree and shall examine defendant's arguments concerning each motion in turn.

### A. Motion for a New Trial

■ The defendant argues that his motion for a new trial should have been granted because the state's evidence was insufficient to establish that defendant's conduct on June 24, 2001, was violent, tumultuous, threatening, or constituted fighting pursuant to § 11–45–1(a)(1). "In deciding a motion for a new trial, the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Otero,* 788 A.2d 469, 472 (R.I.2002) (quoting *State v. Banach,* 648 A.2d 1363, 1367 (R.I.1994)). "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." Id. "If, however, 'the trial justice finds that the state has failed to sustain its burden of proof, a new trial must be ordered.'" *Id.* (quoting *State v. Clark,* 603 A.2d 1094, 1096 (R.I.1992)). "Provided that the trial justice has 'articulated an adequate rationale for denying a motion,' * * * a trial justice's ruling on a new trial motion is entitled to great weight." *State v. Rieger,* 763 A.2d 997, 1002 (R.I.2001) (quoting *State v. Bleau,* 668 A.2d 642, 646 (R.I. 1995)). Accordingly, the trial justice's ruling "will not be overturned unless the trial justice was clearly wrong or unless he or she overlooked or misconceived material and relevant evidence that related to a critical issue in the case." *State v. Bolduc,* 822 A.2d 184, 187 (R.I.2003).

■ In the instant case, the record demonstrates that the trial justice adequately made the requisite review and ar-

ticulated sufficient reasons for denying defendant's motion for a new trial. The trial justice said that he found the state's witnesses to be credible. Based on their testimony and the photographs that were admitted at trial, he found that, not only did defendant strike Ms. Amaral, but also that "[t]he phone cord was pulled out of the wall, the papers knocked to the ground, [and] items were thrown." The trial justice deduced from this evidence that "obviously not only was there fighting, but also tumultuous behavior." He characterized the incident as an obvious "melee" constituting disorderly conduct under the statute, and denied the motion for a new trial.

■ We are satisfied that the trial justice did not overlook or misconceive material evidence in finding that defendant's conduct constituted disorderly conduct under § 11–45–1(a)(1). Giving the trial justice's ruling its due deference, we cannot say that he was clearly wrong in finding that defendant's actions in sweeping the items off the table, yanking the telephone cord out of the wall, and hitting Ms. Amaral constituted the type of behavior prohibited by § 11–45–1(a)(1). We therefore hold that the trial justice's ruling on the motion for a new trial did not constitute reversible error.

### B. Motion for Judgment of Acquittal

■ The defendant's argument that the trial justice erred in denying his motion for judgment of acquittal on the disorderly conduct charge is similarly without merit. When this Court is called upon to review a challenge to the legal sufficiency of the evidence in the context of a motion for judgment of acquittal, we "appl[y] the same standard as that applied by the trial court, namely, '[we] must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt.'" Otero, 788 A.2d at 475 (quoting State v. Snow, 670 A.2d 239, 243 (R.I. 1996)). However, "[t]he standard applied to a motion for judgment of acquittal requires less in the way of evidence than the standard applicable to a motion for a new trial." Id. (quoting State v. Salvatore, 763 A.2d 985, 989 (R.I.2001)). Therefore, in the present case, having concluded that the evidence "was sufficient to withstand the more stringent review applicable to a motion for a new trial, it follows that the evidence was also sufficient to withstand a motion for a judgment of acquittal." Id.

■ The defendant, however, also raises a question of law concerning the motion for judgment of acquittal. He argues that the trial justice erred in denying the motion because the state failed to present evidence that any members of the public were disturbed by defendant's conduct on June 24, 2001. In making his motion for judgment of acquittal at trial, defendant seemed to aver that subsections (a)(1) and (a)(2) of § 11–45–1 should be read together to include a public disturbance component. On appeal, he contends that "the language used in subsection (a)(1) logically requires some type of public disturbance and that an interpretation to the contrary would lead to exceedingly absurd results."[6]

■ This Court undertakes statutory interpretation de novo. State v. Fritz, 801 A.2d 679, 682 (R.I.2002). We recently, however, had the opportunity to interpret the question of law defendant now ad-

---

6. The disorderly conduct statute, G.L.1956 § 11–45–1(a), provides:

"**Disorderly conduct.**—(a) A person commits disorderly conduct if he or she intentionally, knowingly, or recklessly:

"(1) Engages in fighting or threatening, or in violent or tumultuous behavior;

"(2) In a public place or near a private residence that he or she has no right to occupy, disturbs another person by making

vances concerning whether a charge of disorderly conduct under § 11–45–1(a)(1) requires the state to prove some type of public disturbance. In *State v. Russell,* 890 A.2d 453, 458 (R.I.2006), the defendant argued that subsections (a)(1) and (a)(2) of § 11–45–1 must be read in conjunction with each other, thereby requiring that the fighting, threatening, violent, or tumultuous behavior proscribed by subsection (a)(1) occur, as provided in subsection (a)(2), "[i]n a public place or near a private residence that [the defendant] has no right to occupy." Sections 11–45–1(a)(1)–(2). The defendant in *Russell* further argued, as defendant argues in the present case, that § 11–45–1(a)(1)'s language also indicated that a public disturbance was required. *Id.* at 461.

In *Russell,* we held that "there is no suggestion in [§ 11–45–1](a)(1) that the behavior must occur in a public place or be directed at a member of the public and we are not persuaded that such a requirement was intended by the Legislature." *Russell,* 890 A.2d at 461. We emphasized in *Russell* that the complainant had a right to be free of her husband's violent and threatening behavior of turning over the dining room table and throwing a chair through a screened window even though the conduct occurred privately inside their home. *Id.* at 457, 461–62. We were not persuaded that the defendant was insulat-

ed from prosecution merely because his conduct did not breach the public peace. *Id.* at 461. In addition, this Court said that the hearing justice in *Russell* "correctly held that § 11–45–1(a) contains seven specific, mutually exclusive incidents of behavior that are prohibited and that none is incorporated into the other." *Russell,* 890 A.2d at 458. We further noted that "[i]f the Legislature intended to limit the reach of § 11–45–1(a)(1) to conduct occurring in public, it could have done so." *Russell,* 890 A.2d at 461.

Thus, contrary to Mr. Hesford's argument, the state did not have to prove that the defendant's behavior occurred in a public place or disturbed another member of the public to prove disorderly conduct under § 11–45–1(a)(1) beyond a reasonable doubt. After our *de novo* review of the defendant's question of law concerning the disorderly conduct statute, we hold that the trial justice did not err in denying the defendant's motion for judgment of acquittal.

### Conclusion

For the reasons stated herein, we affirm the judgment of conviction. The record shall be remanded to the Superior Court.

loud and unreasonable noise which under the circumstances would disturb a person of average sensibilities;

"(3) Directs at another person in a public place offensive words which are likely to provoke a violent reaction on the part of the average person so addressed;

"(4) Alone or with others, obstructs a highway, street, sidewalk, railway, waterway, building entrance, elevator, aisle, stairway, or hallway to which the public or a substantial group of the public has access or any other place ordinarily used for the passage of persons, vehicles, or conveyances;

"(5) Engages in conduct which obstructs or interferes physically with a lawful meeting, procession, or gathering;

"(6) Enters upon the property of another and for a lascivious purpose looks into an occupied dwelling on the property through a window or other opening; or

"(7) Exposes his or her genitals to the view of others under circumstances in which his or her conduct is likely to cause affront, distress, or alarm to the other persons."